IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION



FILED
Scott L. Poff, Clerk
United States District Court

*By staylor at 10:10 am, Oct 17, 2017*

ANTHONY WILTON SIMMS,

    Petitioner,

v.

TRACY JOHNS,

    Respondent.[1]

CIVIL ACTION NO.: 5:17-cv-6

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Anthony Wilton Simms ("Simms"), who is currently incarcerated at D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response, (doc. 9), to which Plaintiff filed a Reply, (doc. 10). For the reasons which follow, I **RECOMMEND** the Court **DISMISS** Simms' Petition **without prejudice**, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Simms *in forma pauperis* status on appeal.

### BACKGROUND

Simms is serving a 96-month term of incarceration for several counts of theft of government funds, aggravated identity theft, and passing forged Treasury checks over $1,000.00. (Doc. 9-1, pp. 7–15.) He has a projected release date of June 9, 2020, via good conduct time release, to be followed by three (3) years' supervised release. (Id. at pp. 7–9.) On April 7, 2014,

---

[1] The Warden of the facility that has custody of the petitioner is the only proper respondent in a habeas corpus action. Rumsfeld v. Padilla, 542 U.S. 426, 434–35 (2004). Therefore, the Clerk of Court is **DIRECTED** to terminate all Respondents other than Warden Tracy Johns on the docket of this case.

the Bureau of Immigration and Customs Enforcement ("ICE"), formerly the Immigration and Naturalization Service, issued a detainer against Simms. (Id. at p. 23.)

The Bureau of Prisons ("BOP") assigned a Public Safety Factor ("PSF") of alien to Simms' custody classification, because ICE classified him as an alien subject to deportation. (Id. at pp. 2–3, 24–25.) As Respondent explains:

> BOP defines a PSF as relevant factual information regarding the inmate's current offense, sentence, criminal history, or institutional behavior that requires additional security measures to be employed to ensure the safety and protection of the public. Public Safety Factors normally are applied prior to an inmate's initial assignment to an institution; however, additions or deletions may be made at any time thereafter. A maximum of three PSFs may be applied to any given inmate. However, if more than three apply, those which would provide the greatest security and public safety will be utilized. [Doc. 9-1] at ¶ 8, Attach. 5.
>
> A PSF of Alien is applied upon a male or female inmate who is not a citizen of the United States. All long-term detainees will have this PSF applied. When applied, the inmate or the long-term detainee is housed in at least a Low security level institution. The PSF shall not be applied, or shall be removed when . . . ICE or the Executive Office for Immigration Review ("EOIR") have determined that deportation proceedings are unwarranted or there is a finding not to deport at the completion of deportation proceedings. Id. at ¶ 9, Attach. 6.
>
> BOP policy provides that inmates who have been assigned a Public Safety Factor of Alien ordinarily are not eligible for placement into a Residential Reentry Center. Id. at ¶ 11, Attach. 7.

(Doc. 9, pp. 4–5.)

## DISCUSSION

Simms attacks his ICE detainer and the BOP's PSF. In his Petition, Simms argues that his "ICE detainer has not been taken care of within 180 days." (Doc. 1, p. 6.) In his supporting brief, he argues that his Sixth Amendment rights have been violated because no action has been taken on his ICE detainer. (Doc. 1-1, p. 2.) Simms asks that the Court cancel the detainer against him and remove his PSF so that he can be placed in a halfway house. (Id. at pp. 2–3.)

Respondent advances numerous grounds to dismiss Simms' Petition. (Doc. 9.) Respondent contends Simms failed to exhaust his administrative remedies before filing his Petition. (Id. at pp. 7–8.) Moreover, Respondent contends that Simms challenges the conditions of his confinement, and therefore, his claims cannot be brought under Section 2241. (Id. at pp. 5–6.) Respondent also asserts that the immigration detainer against Simms is not "custody" for Section 2241 purposes. (Id. at pp. 6–7.)[2]

## I.     Whether Simms Exhausted his Administrative Remedies

### A.     Legal Requirements for Exhaustion

The Eleventh Circuit Court of Appeals has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). Additionally, the United States Supreme Court recently "held that the

---

[2] Respondent also asserts that Simms does not have a liberty interest in his security classification and that the BOP's placement decisions are not subject to judicial review. (Doc. 9, pp. 9–11.) Whether Simms' putative constitutional claims are viable at this time is of no moment. Simms cannot raise constitutional claims regarding the conditions of his confinement in this Section 2241 Petition, and furthermore, he failed to exhaust his administrative remedies regarding such claims. Moreover, the Court agrees that an inmate ordinarily has no constitutional right to placement in any particular institution. See McKune v. Lile, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise.").

3

PLRA's ["Prison Litigation Reform Act's"] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1856 (June 6, 2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[3]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on

---

[3] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

4

what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process.  Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B.    Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action.  Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted).  Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court.  Id.  In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies.[4]  First, the court is to take the petitioner's version of the facts regarding

---

[4] Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner would be no less applicable to a Section 2241 proceeding. See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683-JFA-TER, 2012 WL 3716872, at *5 (D.S.C.

5

exhaustion as true. Id. at 1082. If, even under the petitioner's version of the facts, the petitioner has not exhausted, the petition must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether petitioner has exhausted, the court need not accept all of petitioner's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### C.   Analysis of Simms' Efforts at Exhaustion

Inmates at D. Ray James must exhaust administrative remedies, beginning their grievance process locally with the Warden by using the contractor's grievance procedures. (Doc. 9-1, p. 4.) If unsatisfied with the resolution of that grievance, the inmate may appeal to the BOP's Administrator of the Privatization Management Branch using a BP-10 form, so long as the appeal involves BOP-related matters.[5] (Id. at p. 4, 42–43.) If the inmate is not satisfied with the Privatization Administrator's response, the inmate may make a final appeal to the BOP's Office of General Counsel using a BP-11 form. (Id.) If an inmate files an administrative remedy concerning a BOP-related matter, the administrative remedies will be recorded in the BOP's SENTRY computer database. (Id. at p. 5.)

---

June 18, 2012) (noting Section 2241's exhaustion requirements and Turner's application of exhaustion standards to a Section 2241 petition).

[5]   Examples of BOP-related matters which must be appealed through the BOP are: classification, designation, sentence computations, reduction in sentences, removal or disallowance of good conduct time, participation in certain programs, and an inmate's eligibility for early release. (Doc. 9-1, p. 50.)

Simms' claims concern BOP-related matters that must be appealed through the above-described process. However, Simms has not filed any administrative remedy filings related to the allegations raised in his Petition. (Id. at pp. 52–53.) In his Petition, Simms admits that he did not "appeal the decision [he is challenging], file a grievance, or seek an administrative remedy." (Doc. 1, p. 2.) In his Reply, he makes arguments regarding the availability of the administrative remedies, but he implicitly concedes that he did not exhaust any administrative remedies before filing this action. (Doc. 10.) Thus, even accepting Simms' version of facts as true, under the first Turner step, he failed to exhaust D. Ray James' administrative remedies before filing his Petition.

Simms asks the Court to excuse his failure to file a grievance because prison authorities "refuse[d] or fail[ed] to give Mr. Simms the appropriate grievance forms despite his requests." (Id. at p. 1.) Construing Simms' arguments liberally, he contends that D. Ray James' administrative remedies are not available to him. Though the Supreme Court has rejected a "special circumstances" exception, it reiterated that a prisoner need only exhaust those remedies which were available to him. Ross v. Blake, ___ U.S. at ___, 136 S. Ct. at 1858. The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. ___ U.S. at ___, 136 S. Ct. at 1859. First, the Court stated that, in some instances, the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Thus, if the administrative procedure lacks authority or if the officials with apparent authority "decline ever to exercise it," the inmate has no obligation to exhaust the remedy. Id. Second, when administrative remedies are so confusing that they are "essentially 'unknowable,'" exhaustion is not required. Id. (citing Goebert v. Lee Cty., 510 F.3d 1312, 1323

(11th Cir. 2007), and Turner, 541 F.3d at 1084).  Lastly, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Id.  However, the Supreme Court recognized that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise."  Id.

Under the first Turner step, where the Court must accept Simms' allegations as true, he arguably establishes that D. Ray James officers "thwart[ed] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Ross, ___ U.S. at ___, 136 S. Ct. at 1859.  He contends that he requested grievance forms from prison officials, but they refused to give them to him.

However, Simms' claims of unavailability readily wither when subjected to the crucible of examination the second Turner step requires.  Again, under that step, the Court resolves any disputed factual issues and then assesses, under those findings, whether the prisoner has exhausted his available administrative remedies.  Turner, 541 F.3d 1083.  Having reviewed all of Simms' and Respondent's filings, the Court finds Respondent's account of the availability of administrative remedies more credible than Simms' account.  Despite the form Simms used to file his Petition specifically asking why he failed to exhaust his administrative remedies, Simms never mentioned that prison officials denied his requests for forms.  (Doc. 1, p. 2.)  He did not make any claims of unavailability until after Respondent raised the issue.  Further, though Simms baldly states that "prison officials" failed to provide him grievance forms, he provides no details whatsoever to support this assertion.  For instance, he does not state when he requested grievance forms or identify the prison official who denied that request.  In contrast, Respondent submits evidence that Simms could obtain grievance forms from a unit team member at D. Ray

8

James.  (Doc. 9-1, p. 47.)  Moreover, Respondent's attachments reveal that Simms was actually able to file a grievance on November 3, 2014, though the grievance was rejected due to his failure to properly fill out the form.  (Id. at p. 53.)  This evidence thwarts Simms' conclusory allegations of unavailability.

Because Simms failed to exhaust the administrative remedies that were available to him, the Court should **DISMISS** Simms' Petition.

## II.    Whether Simms can Challenge his PSF via Section 2241

Additionally, Simms cannot challenge his PSF or other conditions of his confinement in this Section 2241 action.  Such claims would ordinarily be brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  The distinction between claims which may be brought under Bivens and those which must be brought as habeas petitions is reasonably well-settled.  Claims in which prisoners challenge the circumstances of their confinement are Bivens actions, not habeas actions.  See, e.g., Hill v. McDonough, 547 U.S. 573, 579 (2006).  Habeas actions, in contrast, explicitly or by necessary implication, challenge a prisoner's conviction or the sentence imposed on him by a court (or under the administrative system implementing the judgment).  Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).  Thus, for example, when a prisoner makes a claim that, if successful, could shorten or invalidate his term of imprisonment, the claim must be brought as a habeas petition, not as a Bivens claim.  See, e.g., Edwards v. Balisok, 520 U.S. 641 (1997); Heck v. Humphrey, 512 U.S. 477 (1994).

In Caba v. United States, No. CV310-082, 2010 WL 5437269 (S.D. Ga. Nov. 30, 2010), *report and recommendation adopted*, 2010 WL 5441919 (S.D. Ga. Dec. 27, 2010), this Court determined a petitioner's allegations concerning his security classification—specifically the

BOP's "imposition of a PSF of 'Alien'"—was a challenge to the conditions of the petitioner's confinement and were not cognizable in a Section 2241 petition. 2010 WL 5437269, at *2. However, this Court has since determined a petitioner can challenge his security classification or place of confinement via Section 2241.[6] Baranwal v. Stone, No. CV 314-098, 2015 WL 171410, at *2 (S.D. Ga. Jan. 13, 2015); Herrera v. Johns, Civil Action No. CV513-031, 2013 WL 5574455, at *1 n.1 (S.D. Ga. Oct. 8, 2013). Other courts have reached this same conclusion. See United States v. Saldana, 273 F. App'x 845 (11th Cir. 2008); Becerra v. Miner, 248 F. App'x 368 (3d Cir. 2007); Wrobel-Molina v. United States, Civ. No. 09-1080-CV-W-NKL-P, 2010 WL 1486055, at *2 (W.D. Mo. Apr. 14, 2010).

Courts in the Fifth Circuit note the distinction between a Section 2241 and a civil rights action "becomes 'blurry' when an inmate challenges an unconstitutional condition of confinement or prison procedure that affects the timing of his release from custody." Pham v. Wagner, No. 5:14-CV-67(DCB)(MTP), 2016 WL 5852553, at *2 (S.D. Miss. Oct. 6, 2016) (citing Carson v. Johnson, 112 F.3d 818, 820–21 (5th Cir. 1997)). As a result, the Fifth Circuit Court of Appeals has "'adopted a simple, bright-line rule for resolving such questions.' If a favorable determination of an inmate's claims would not automatically entitle the inmate to accelerated release, the proper vehicle is a civil rights suit." Id. (quoting Carson, 112 F.3d at 820–21). If a petitioner is not seeking immediate or early release from custody and is instead seeking to have his PSF of "Deportable Alien" removed so that he will be eligible for programs that could reduce his sentence, he has not alleged that a favorable determination would automatically entitle him to a speedier release from custody. Thus, the proper vehicle for raising his claims would be a civil rights suit. Id.; see also Boyce v. Ashcroft, 251 F.3d 911, 914 (10th

---

[6] Respondent's citation to case law finding Section 2241 is not the proper vehicle by which to challenge a PSF is not erroneous. (Doc. 9, p. 6.) The above contrary citations merely illustrate that, as a whole, there is not a consensus on this issue.

10

Cir. 2001) ("Prisoners who raise constitutional challenges to other prison decisions—including transfers to administrative segregation, exclusion from prison programs, or suspension of privileges, e.g., conditions of confinement, must proceed" with a civil rights lawsuit.).

I find the Fifth Circuit's test to be proper for resolving this question. Based on that test, Simms cannot pursue his claims in this Section 2241 Petition because he is not seeking immediate or early release from custody. While a favorable determination may entitle him to participate in programs that could reduce his sentence, a favorable determination does not automatically entitle him to a speedier release from custody. Therefore, the Court should **DISMISS** Simms' Petition for lack of jurisdiction. Even if this Court has jurisdiction over Simms' Petition, his claims would still be subject to dismissal for the reasons discussed in Section I of this Report.

### III.   Whether Simms is "in Custody" Pursuant to the ICE Detainer for Section 2241 Purposes

According to Respondent, Simms' ICE detainer does not constitute custody for Section 2241 purposes. Respondent states Simms' assertions are premature because he is in BOP custody, and removal proceedings have yet to begin. (Doc. 9, pp. 6–7.)

"A detainer serves to advise another law enforcement agency that the [Department of Homeland Security] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a). "The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible." Id.

Respondent states that, in the Eleventh Circuit, "immigration detainers only constitute 'custody' for purposes of habeas proceedings when the Government has commenced removal

11

proceedings to determine whether the petitioner is removable from the United States. (Doc. 9, p. 7 (citing Orozco v. U.S. INS, 911 F.2d 539, 541 (11th Cir. 1990).)[7] Indeed, the Eleventh Circuit has held that the filing of a detainer, standing alone, does not cause a prisoner to come within the custody of the Department of Homeland Security or ICE. Oguejiofor v. Att'y Gen. of the U.S., 277 F.3d 1305, 1308 n.2 (11th Cir. 2002); Orozco, 911 F.2d at 541. This position is in accord with several other Courts of Appeals. See, e.g., Zolicoffer v. U.S. Dep't of Justice, 315 F.3d 538, 539 (5th Cir. 2003); Garcia v. Taylor, 40 F.3d 299, 303–04 (9th Cir. 1994); Santana v. Chandler, 961 F.2d 514, 516 (5th Cir. 1992); Prieto v. Gulch, 913 F.2d 1159, 1162 (6th Cir. 1990); Mohammed v. Sullivan, 866 F.2d 258, 260 (8th Cir. 1989). "The underlying rationale of these courts is that a detainer, as distinguished from other [ICE] orders, does not put a 'hold' on" the individual. Ryan v. Dep't of Homeland Sec., No. 3:09cv399/LAC/MD, 2010 WL 1433166, at *1 (N.D. Fla. Mar. 8, 2010); accord Galaviz-Medina v. Wooten, 27 F.3d 487, 493 (10th Cir. 1994) (noting that the lodging of a detainer, without more, is insufficient to render the alien "in custody").

Generally, a detainer is viewed as "an informal process advising prison officials that a prisoner is wanted on other pending charges and requesting notification prior to the prisoner's release." Orozco, 911 F.3d at 541 n.2 (citing United States v. Shahryar, 719 F.3d 1522, 1524 n.3 (11th Cir. 1983)). "In the immigration context, a detainer usually serves only as a notice to prison authorities that . . . ICE is going to be making a decision about the deportability of the alien in the future." Ryan, 2010 WL 1433166, at *1 (citing Campillo v. Sullivan, 853 F.2d 593,

---

[7] Since Orozco, the Eleventh Circuit has held that challenges to removal proceedings cannot be brought under Section 2241. Themeus v. U.S. Dep't of Justice, 643 F. App'x 830, 832 (11th Cir. 2016) ("Following enactment of the REAL ID Act of 2005, district courts lack habeas jurisdiction to entertain challenges to final orders of removal.").

595 (8th Cir. 1988)). "The reasoning follows that the detainer does not serve to establish conclusively either present or future restraints on the prisoner's liberty." Id. "Because there is no actual claim to the individual following the completion of his criminal sentence, there is no custody." Id.

Thus, Simms is not "in custody" of ICE for purposes of Section 2241 simply because ICE lodged a detainer against him. Furthermore, Simms does not contend that ICE served him with an order to show cause or a final deportation order or that there was some other reason he should be considered to be in the custody of ICE. See Alanis-Bustamonte v. Reno, 201 F.3d 1303, 1309 (11th Cir. 2000) (a show cause order, in combination with a warrant on a detainer, are prerequisites to formal commencement of removal proceedings). Because Simms is not "in custody" of ICE at this time, this Court lacks subject matter jurisdiction under 28 U.S.C. § 2241 to address his claim.

Accordingly, the Court should **DISMISS** this portion of Simms' Petition.

## IV.   Leave to Appeal *in Forma Pauperis*

The Court should also deny Simms leave to appeal *in forma pauperis*. Though Simms has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous

claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Simms' Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Simms *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS without prejudice** Simms' Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.  I further **RECOMMEND** that the Court **DENY** Simms leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be

served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Simms and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 17th day of October, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA